IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LUXER CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 24-602 (JCG) |
| | ) | |
| BUTTERFLYMX, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**BUTTERFLYMX'S OPENING BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

OF COUNSEL:

Richard G. Frenkel
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

Gregory K. Sobolski
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

Nicole Elena Bruner
Gabriel K. Bell
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
(202) 637-2200

October 24, 2024

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Defendant ButterflyMX,
Inc.*

# TABLE OF CONTENTS

I.    NATURE AND STAGE OF PROCEEDINGS..................................................1

II.   SUMMARY OF THE ARGUMENT .................................................................1

III.  STATEMENT OF FACTS ..............................................................................3

    A.    The '675 Patent's Specification ...........................................................3

    B.    The '675 Patent's Claims ....................................................................5

IV.   LEGAL STANDARD .....................................................................................7

    A.    Motions to Dismiss Under Rule 12(b)(6)..............................................7

    B.    Patent Eligibility Under 35 U.S.C. § 101 .............................................7

V.    ARGUMENT..................................................................................................10

    A.    *Alice* Step One: Claim 1 Is Directed To The Abstract Idea Of
          Authorizing Access To A Secure Location.........................................10

    B.    *Alice* Step Two: Claim 1 Adds Nothing Inventive To The
          Abstract Idea.....................................................................................16

    C.    The Other Claims Are Directed To The Same Abstract Idea
          And Add Nothing Inventive ...............................................................18

    D.    There Is No Reason To Delay Holding The Claims Ineligible...........21

VI.   CONCLUSION...............................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018) ........................................................................22

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
  838 F.3d 1253 (Fed. Cir. 2016) ........................................................................10

*AI Visualize, Inc. v. Nuance Commc'ns, Inc.*,
  97 F.4th 1371 (Fed. Cir. 2024) ...........................................................................7

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014)...............................................................................*passim*

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
  967 F.3d 1285 (Fed. Cir. 2020) ......................................................................9, 22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................................7

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility, LLC*,
  827 F.3d 1341 (Fed. Cir. 2016) ........................................................................18

*Beteiro, LLC v. DraftKings Inc.*,
  104 F.4th 1350 (Fed. Cir. 2024) ................................................................17, 20

*Bilski v. Kappos*,
  561 U.S. 593 (2010)......................................................................................1, 12

*CardioNet, LLC v. InfoBionic, Inc*,
  955 F.3d 1358 (Fed. Cir. 2020) ........................................................................16

*CardioNet, LLC v. InfoBionic, Inc.*,
  No. 20-2123, 2021 WL 5024388 (Fed. Cir. 2021) ...........................................20

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*,
  935 F.3d 1341 (Fed. Cir. 2019) ...............................................................14, 16, 17

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019) ..........................................................14, 17, 19, 20

*Consumer 2.0, Inc. v. Tenant Turner, Inc.*,
   343 F. Supp. 3d 581 (E.D. Va. 2018), *aff'd*, 796 F. App'x 752
   (Fed. Cir. 2020) ................................................................................................9, 13

*Content Extraction & Transmission LLC v. Wells Fargo Bank*,
   776 F.3d 1343 (Fed. Cir. 2014) ...........................................................................19

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
   815 F. App'x 529 (Fed. Cir. 2020) ......................................................................13

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016) ...........................................................................16

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
   955 F.3d 1317 (Fed. Cir. 2020) ....................................................................*passim*

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
   839 F.3d 1089 (Fed. Cir. 2016) ...........................................................................21

*Hawk Tech. Sys., LLC v. Castle Retail*,
   LLC, 60 F.4th 1349 (Fed. Cir. 2023) .....................................................................9

*Intell. Ventures I LLC v. Symantec Corp.*,
   838 F.3d 1307 (Fed. Cir. 2016) ...............................................................9, 11, 13

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
   876 F.3d 1372 (Fed. Cir. 2017) ...........................................................................23

*McRO, Inc. v. Bandai Namco Games America Inc.*,
   837 F.3d 1299 (Fed. Cir. 2016) ...........................................................................16

*Mobile Acuity Ltd. v. Blippar Ltd.*,
   110 F.4th 1280 (Fed. Cir. 2024) ..........................................................................19

*OIP Techs., Inc. v. Amazon.com, Inc.*,
   788 F.3d 1359 (Fed. Cir. 2015) ...........................................................................14

*PersonalWeb Techs., LLC v. Google LLC*,
   8 F.4th 1310 (Fed. Cir. 2021) .......................................................................11, 21

*Prism Techs. LLC v. T-Mobile USA, Inc.*,
   696 F. App'x 1014 (Fed. Cir. 2017) ....................................................................13

*RecogniCorp, LLC v. Nintendo Co.*,
  855 F.3d 1322 (Fed. Cir. 2017) ........................................................................14

*Repifi Vendor Logistics, Inc. v. IntelliCentrics, Inc.*,
  No. 21-1906, 2022 WL 794981 (Fed. Cir. 2022) ....................................9, 13, 22

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
  65 F.4th 698 (Fed. Cir. 2023) ............................................................................22

*SAP Am., Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018) ...................................................................*passim*

*Simio, LLC v. FlexSim Software Prods., Inc.*,
  983 F.3d 1353 (Fed. Cir. 2020) .................................................................7, 9, 23

*Smart Systems Innovations, LLC v. Chi. Transit Auth.*,
  873 F.3d 1364 (Fed. Cir. 2017) ...................................................................*passim*

*Smartflash LLC v. Apple Inc.*,
  680 F. App'x 977 (Fed. Cir. 2017) .....................................................................13

*Travel Sentry, Inc. v. Tropp*,
  No. 21-1908, 2022 WL 443202 (Fed. Cir. 2022) ...............................................14

*Trinity Info Media, LLC v. Covalent, Inc.*,
  72 F.4th 1355 (Fed. Cir. 2023) ............................................................11, 18, 21

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
  874 F.3d 1329 (Fed. Cir. 2017) .......................................................................8, 9

*Universal Secure Registry v. Apple Inc.*,
  10 F.4th 1342 (Fed. Cir. 2021) ...................................................................*passim*

*VeriPath, Inc. v. Didomi*,
  842 F. App'x 640 (Fed. Cir. 2021) .....................................................................13

*WiTrcity Corp. v. Momentum Dynamics Corp.*,
  563 F. Supp. 3d 309 (D. Del. 2021)....................................................................19

*Yu v. Apple Inc.*,
  1 F.4th 1040 (Fed. Cir. 2021) ............................................................................16

## STATUTES

35 U.S.C. § 101 ..................................................................................*passim*

## I.    NATURE AND STAGE OF PROCEEDINGS

Plaintiff Luxer Corporation ("Luxer") alleges infringement of U.S. Patent No. 11,625,675 ("'675 patent").  D.I. 1 ("Complaint").  Defendant ButterflyMX, Inc. moves to dismiss with prejudice per Rule 12(b)(6) because the asserted patent's claims are directed to patent-ineligible subject matter under 35 U.S.C. § 101.  In parallel litigation, Luxer alleges two other defendants infringe the '675 patent and those defendants likewise moved to dismiss under § 101.  *Luxer Corp. v. Package Concierge, Inc.*, No. 1:24-cv-00603-JCG (D. Del. July 11, 2024), D.I. 16; *Luxer Corp. v. Parcel Pending, Inc.*, No. 1:24-cv-00604 (D. Del. July 11, 2024), D.I. 11. This Court scheduled joint argument on the motions on December 16.  D.I. 21.

## II.    SUMMARY OF THE ARGUMENT

1.    The Court should hold that the '675 patent's claims are invalid under § 101 and dismiss the Complaint with prejudice.  The Supreme Court has repeatedly emphasized that abstract ideas—such as fundamental practices, human organizational concepts, and mental processes—are ineligible for patent protection under § 101.  *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216-18 (2014); *Bilski v. Kappos*, 561 U.S. 593, 601-02 (2010).  Such ideas cannot be patented because they are basic tools in the "storehouse of knowledge" that are "free to all … and reserved exclusively to none." *Bilski*, 561 U.S. at 602 (citation omitted). And the Supreme Court has held that this critical patent law principle cannot be

1

circumvented merely by limiting an idea to a particular technological environment or implementing it using generic computer components and other tangible features. *Alice*, 573 U.S. at 221-27.

Accordingly, in *Alice*, the Supreme Court set forth the two-step test for determining patent-ineligibility under § 101, which is a threshold requirement for any patent suit. Claims are ineligible if they (1) are, at root, directed to an abstract idea notwithstanding their computer implementation and (2) add nothing significant (an inventive concept) to that idea. *Id.*

2. The '675 patent's claims fail that test. At *Alice* step one, the patent claims are directed to the abstract idea of authorizing access to a secure location upon verification of a user's credentials. That concept is the central focus of the purported invention, as the claims, specification, and Complaint make plain. But controlling a delivery person's access to a storage room is a longstanding human concept—a quintessential abstract idea—that does not become non-abstract by dressing it up with computer implementation and physical components (as a "system" that controls an "electronic lock"). At *Alice* step two, the claims add nothing inventive, instead implementing the abstract access-control idea using admittedly conventional components, such as a computer processor and an electronic lock.

Indeed, the Federal Circuit has "*repeatedly* found the concept of controlling access to resources via software to be an abstract idea" and held similar access-

control systems ineligible as a matter of law. *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1327 (Fed. Cir. 2020) (emphasis added); *see also, e.g.*, *Universal Secure Registry v. Apple Inc.*, 10 F.4th 1342, 1351-52 (Fed. Cir. 2021); *Smart Systems Innovations, LLC v. Chi. Transit Auth.*, 873 F.3d 1364, 1371-72 (Fed. Cir. 2017). The claims here are materially indistinguishable, and thus likewise ineligible. The Court should dismiss the Complaint with prejudice.

## III.    STATEMENT OF FACTS

The '675 patent, titled "Method and System for Controlling a Storage Room" and issued in 2023, is directed to controlling access to a locked storage room with an electronic lock.

### A.    The '675 Patent's Specification

The patent describes controlling access to a storage room by unlocking a door if a person (such as a delivery person seeking to deliver a package) is authorized to enter the storage room. *See* '675 patent at Abstract, 1:39-40, 3:55-4:11, 19:60-20:67. For example, the specification explains that a delivery person can enter an access code and a "lock interface" determines whether the code matches a "predetermined password" and, if so, unlocks the door. *Id.* at 20:31-37; *see also id.* at 9:8-35, 13:33-14:15, 16:13-42. The patent depicts this straightforward concept in Figure 5:



FIG. 5

*Id.* at Fig. 5. As shown, the delivery person submits a request for access from a "user device" such as a tablet (at step 502); the lock interface determines whether the user is allowed to access (at step 504); if so, it sends a signal to unlock the door (at steps 508 and 510); and if not, the request is denied (at step 505). *Id.* at 19:60-20:67.

The specification does not purport to invent any improved hardware or computer functionality to achieve this goal of controlling access. Instead, the

4

specification describes at length various generic components, such as "doors," which "are structures that serve to block off and prevent access, and allow access to, an entrance to a space (e.g., a room, a storage area, a receptacle, a locker, etc.)"; "door frames," which "are structures that surround doors"; and "electronic locks," which "are electronic fastening devices for locking the doors." *Id.* at 5:58-60, 5:35-36, 6:14-15; *see id.* at 6:19 ("any sort of locks"). Further, the "storage area" can include "any receptable"—a "generic" term referring to "a locker and any other container"— or "rooms in a building or structure." *Id.* at 23:36-24:15. The specification also admits that the "lock interface" can be any generic "computer system" (with any "processor") that matches user information and controls the locks. *Id.* at 16:13-17:6; *see id.* at 9:8-35, 13:33-14:15, 43:38-45:60, Figs. 4A, 13.

## B.     The '675 Patent's Claims

The patent's claims likewise focus on controlling access using generic components. Claim 1—the lone claim discussed in the Complaint—provides:

> **1**. A system comprising:
> at least one electronic lock for locking a door of a storage room that is stationary and part of a building, the storage room being large enough to accommodate packages that are small, medium, and oversized;
> a lock interface that is communicatively coupled to the at least one electronic lock, the lock interface having at least one processor that implements one or more machine instructions stored on at least one non-transitory computer readable medium;

wherein the one or more machine instructions, when
implemented, cause the processor of the lock interface
to implement a method including at least

receiving, at the lock interface from a terminal, a first
signal associated with a delivery, requesting access
by unlocking the door;

in response, sending from the lock interface to the at
least one electronic lock, a second signal including at
least a request to open the door;

opening the electronic lock, based on the request, and
allowing the access through the door, regardless of
whether a storage area associated with the door is in
use and regardless of whether the package is small,
medium, or oversized;

wherein the request includes at least a user identity and a
code, wherein the method further includes, after receiv-
ing the first signal including the request,

verifying, by the lock interface, the request by authen-
ticating the user identity and the code received from
the terminal;

approving the request, by the lock interface, after the
user identity and the code are successfully authenti-
cated;

in response to the approving of the request, sending the
second signal, from the lock interface to the at least one
electronic lock, the second signal causing the at least
one electronic lock to automatically unlock, the at least
one electronic lock including a circuit that includes at
least

a signal input port that is communicatively connected
to at least one signal output port of the lock interface;

an electronic switch that, in response to the receiving of
signals from the lock interface, causes electric cur-
rent to flow through the at least one electronic lock;

the step of verifying, by the lock interface, the request
further including at least

comparing, by the lock interface, the user identity and
the code received from the terminal with data stored
in the lock interface;

approving the request, by the lock interface, when the
user identity and the code received match the data
stored in the lock interface, and

rejecting the request, by the lock interface, when at
least one of the user identity and the code received
does not match the data stored in the lock interface;
and

in response to the rejecting of the request, sending,
from the lock interface to the terminal, a message
indicating that the request is invalid.

6

The other independent claims are materially the same and the dependent claims also add nothing significant, as discussed below. *Infra* at 18-21.

## IV.    LEGAL STANDARD

### A.    Motions to Dismiss Under Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Patent eligibility under § 101 is a threshold issue that "may be, and frequently has been, resolved on a Rule 12(b)(6)" motion, before formal claim construction or fact development, where there are no relevant factual disputes. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018); *see, e.g.*, *AI Visualize, Inc. v. Nuance Commc'ns, Inc*., 97 F.4th 1371, 1378 (Fed. Cir. 2024) (affirming D. Del. dismissal); *Universal Secure*, 10 F.4th at 1346 (same). The Court accepts well-pleaded factual allegations but disregards conclusory statements and legal conclusions on § 101 eligibility. *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020).

### B.    Patent Eligibility Under 35 U.S.C. § 101

Section 101 of the Patent Act delineates the categories of patent eligible subject matter: "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. But § 101

"contains an important implicit exception" for abstract ideas—such as fundamental human activities and mental processes—which are not patent eligible. *Alice*, 573 U.S. at 216. The Supreme Court's two-step *Alice* framework governs whether computer claims are ineligible under § 101. *Id.* at 217-27.

At step one, the Court determines whether the claims are, at root, directed to an abstract idea notwithstanding their computer implementation or other tangible components. *Id.* at 218. For example, "[c]ontrolling access to resources is exactly the sort of process that 'can be performed in the human mind, or by a human using a pen and paper,'" which the Federal Circuit has "repeatedly found unpatentable." *Ericsson*, 955 F.3d at 1327 (citation omitted). The Court evaluates the "focus of the claims" to determine if their "character as a whole" is directed to an abstract idea, instead of a "specific asserted improvement in computer capabilities." *Smart Systems*, 873 F.3d at 1371-72 (citations omitted).

At step two, the Court determines whether other claim elements, individually or combined, add "significantly more"—something "inventive"—apart from the abstract idea. *Alice*, 573 U.S. at 217-22. The claims cannot simply implement the abstract idea using "conventional computer and network components." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017). Claims that add nothing inventive are ineligible as a matter of law. *Id.*

At both steps, allegedly eligible subject matter cannot stem from the abstract idea itself. *Simio*, 983 F.3d at 1364; *SAP*, 898 F.3d at 1163. Automating an abstract idea in a "'particular … technological environment'" or field of use with conventional computer technology does not make claims "'any less abstract'" and contributes nothing inventive. *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1314-16 (Fed. Cir. 2016) ("*Symantec*"). Nor may claims recite "'generic functional language to achieve [the] purported solutions'" without claiming "*how* the desired result is achieved.*" *Two-Way Media*, 874 F.3d at 1339 (citation omitted); *see Hawk Tech. Sys., LLC v. Castle Retail*, LLC, 60 F.4th 1349, 1357-59 (Fed. Cir. 2023). Also, "technological details set forth in the patent's specification and not set forth in the claims" cannot confer eligibility. *Symantec*, 838 F.3d at 1322; *see Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1293 (Fed. Cir. 2020) ("[F]eatures that are not claimed are irrelevant as to [*Alice*] step 1 or step 2 ….").

Applying *Alice*, the Federal Circuit has "repeatedly found the concept of controlling access to resources via software to be an abstract idea" even when implemented using particular tangible components. *Ericsson*, 955 F.3d at 1327; *see, e.g.*, *Universal Secure*, 10 F.4th at 1351-52; *Smart Systems*, 873 F.3d at 1371-72; *Repifi Vendor Logistics, Inc. v. IntelliCentrics, Inc*., No. 21-1906, 2022 WL 794981 (Fed. Cir. 2022); *Consumer 2.0, Inc. v. Tenant Turner, Inc*., 343 F. Supp. 3d 581, 584 (E.D. Va. 2018), *aff'd*, 796 F. App'x 752 (Fed. Cir. 2020).

## V.     ARGUMENT

The claims are ineligible because they (1) are directed to an abstract idea for authorizing access and (2) add nothing inventive.

### A.     *Alice* Step One: Claim 1 Is Directed To The Abstract Idea Of Authorizing Access To A Secure Location

Claim 1 is directed to the abstract idea of authorizing access to a secure location (a storage room) upon verification of a user's credentials.  Claim 1 breaks that concept into a series of basic functions, recited at a high level of generality: (1) "receiving" a user's request (which includes the user's identity and a code) to unlock a door to a large storage room, (2) "verifying" the request (by comparing the user identity and code with stored data), and then either (3) "approving the request" and "allowing access" by "automatically unlock[ing]" the door (if the data matches) or (4) "rejecting the request" (if the data does not match).  *See* '675 patent cl. 1; *supra* at 5-6.  Although recited with excess verbiage and various generic components (e.g., "storage room," "door," "electronic lock," and "lock interface"), claim 1 focuses on these functions for authorizing access to a secure location upon verification of a user's credentials.  *See Ericsson*, 955 F.3d at 1326 ("[a]lthough written in technical jargon," claims focus on abstract idea: "controlling access to, or limiting permission to, resources"); *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1256 (Fed. Cir. 2016) ("[s]tripped of excess verbiage," claims are abstract).  The specification confirms as much.  *Supra* at 3-5.  Indeed, Figure 5

depicts the purported invention as a trivial flowchart whereby access is either granted (and the door is unlocked) or denied. *See* '675 patent, Fig. 5, 19:60-20:67.[1]

Claim 1 is directed to an abstract idea for two reasons.

First, it reflects a longstanding, commonplace human concept for controlling access. *See Symantec*, 838 F.3d at 1314 ("'fundamental … practice[s] long prevalent' are abstract ideas") (quoting *Alice*, 573 U.S. at 219). The notion of granting or denying a delivery person access to a large storage room long predates computers. A concierge, for example, performs the same basic steps by (1) receiving a delivery person's request to enter a large storage room that holds packages, (2) checking the person's credentials, and (3) unlocking the door if the person is authorized to enter, or (4) denying access if the person is not authorized. *See* '675 patent cl. 1. The same concept is familiar in other contexts, such as when buildings or properties require badges to access certain areas. That the claimed activities mirror commonplace concepts—activities "that 'can be performed in the human mind' or 'using a pencil and paper'"—is "a telltale sign of abstraction." *Trinity Info Media, LLC v. Covalent, Inc*., 72 F.4th 1355, 1361-62 (Fed. Cir. 2023) (quoting *PersonalWeb Techs., LLC v. Google LLC*, 8 F.4th 1310, 1316 (Fed. Cir. 2021)).

---

[1] *See also* Compl. ¶ 11 (describing "patented technology" as "controlled access to a package room" using a "delivery access code").

Claim 1 is indistinguishable from other computerized access-control claims the Federal Circuit found ineligible. *See Bilski*, 561 U.S. at 611-12 (finding claims ineligible by comparing to ones previously found ineligible). The Federal Circuit has "repeatedly found the concept of controlling access to resources via software to be an abstract idea." *Ericsson*, 955 F.3d at 1327. Claim 1 is no different.

In *Ericsson*, for example, the court found ineligible a "system for controlling access to a platform" by matching a stored "identification." *Id*. at 1325-26. Although "written in technical jargon," the claims "at the[ir] core" were "directed to the abstract idea of controlling access to resources" using software. *Id*. at 1326. That was "exactly the sort of process that 'can be performed in the human mind, or by a human using a pen and paper.'" *Id*. at 1327 (citation omitted). So too here. Although wrapped in jargon, the claims for controlling access to a storage room are "exactly the sort of process" a human can do. *See id*. at 1326-27.

Similarly, in *Universal Secure*, the detailed claims recited an "electronic ID device" using multifactor authentication based on encryption and the user's characteristics (e.g., "biometric measurement[s]") to control access to a secure registry. 10 F.4th at 1351-52. But the Federal Circuit held the claims were directed to an abstract idea for authenticating access. *Id*. at 1352 (affirming Rule 12(b)(6) dismissal). In *Smart Systems*, the Federal Circuit held ineligible claims for "validating entry into a … transit system" by verifying a bankcard and denying

access if the bankcard is invalid. 873 F.3d at 1368-71 (affirming Rule 12(c) judgment). And in *Repifi Vendor Logistics*, the Federal Circuit held ineligible claims for automating "credentialing visitors [with visitor badges] and checking them in and out of an access-controlled environment" such as an "office building." 2022 WL 794981, at *1 (affirming Rule 12(b)(6) dismissal) (citation omitted).[2] Here, claim 1's focus on controlling access to a storage space based on user credentials is just as abstract and ineligible as the access control claims in those cases.

Ignoring this substantial body of precedent, Luxer nonetheless argues in the parallel cases that claim 1 is eligible because it recites "a concrete *system* with *physical parts*." MTD Opp'n at 5, *Package Concierge, Inc.*, No. 1:24-cv-603, D.I. 18 at 5. That position is squarely foreclosed by *Alice*: that a claim recites a "*tangible* system (in § 101 terms, a 'machine')" is "*beside the point*." 573 U.S. at 224 (emphases added). Here, automating an access-control idea with generic computer components (a "lock interface" with a "processor" to control the locks using "signals") does not make claim 1 "any less abstract." *Symantec*, 838 F.3d at 1319

---

[2] *See also VeriPath, Inc. v. Didomi*, 842 F. App'x 640, 641-42 (Fed. Cir. 2021) ("controlling access to a user's personal information"); *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529 (Fed. Cir. 2020) (controlling access based on "encryption trust level"); *Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1016 (Fed. Cir. 2017) ("receiving" identity data, "authorizing" computer, and "permitting access"); *Smartflash LLC v. Apple Inc.*, 680 F. App'x 977, 980 (Fed. Cir. 2017) ("us[ing] rules to determine whether access is permitted"); *Consumer 2.0*, 343 F.Supp.3d at 588 ("provid[ing] automated entry to a property without human interaction") (all held ineligible).

(citation omitted); *see, e.g.*, *Ericsson*, 955 F.3d at 1325-26 (ineligible claims recited software "interface" to control access to resources); *Universal Secure*, 10 F.4th at 1351-52 (ineligible computer claims for controlling access using biometric sensors and access codes); *see also OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) (automation to make "more efficient" is still abstract). Nor does reciting other tangible components such as the "electronic lock" with a "circuit" and "electronic switch" make any difference. *See Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1345-46 (Fed. Cir. 2019) (ineligible claims for controlling garage doors using wireless signals); *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 770 (Fed. Cir. 2019) (ineligible claims recited "quite tangible" "physical machine" with multiple electrical components for controlling charging stations); *Travel Sentry, Inc. v. Tropp*, No. 21-1908, 2022 WL 443202, at *1 (Fed. Cir. 2022) (ineligible claims recited "dual-access lock").

Second, claim 1 does not purport to provide any "specific means or method" for improving technology, instead reciting generalized, results-oriented steps—another hallmark of claims that are abstract at step one. *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) (citation omitted).

The specification treats claim 1's components—a storage room that holds packages of any size, a door, an electronic lock, a switch, and a lock interface with a processor to match credentials and unlock the door (or not)—as generic, not any

14

technological improvement. *See*, *e.g.*, '675 patent at 6:14-25 ("any" type or combination of electronic locks), 14:35-52 (any type of generic electrical switch), 9:8-35 (lock interface is "a device" that sends signals and matches codes to control locks), 16:13-17:6 (lock interface can be "computer system" with "processor" and generic components); *supra* at 3-5.

Further, the claims merely recite generalized computer steps for "receiving" an access request, "verifying" the request by "matching" the user identity and code with stored data, and then approving or denying the request accordingly. *See* '675 patent cl. 1; *supra* 5-6. The claims require no technologically improved way to achieve those functional results—no particular rules, algorithms, or explanation of how to implement them—as the specification admits. *See, e.g.*, '675 patent at 6:40 (verification can be as simple as matching "predetermined key code or password"), 8:51-58 (similar), 20:59-67 (steps in Figure 5 may be mixed, supplemented, reordered, or omitted); *supra* at 3-6.[3]

The Federal Circuit held that claims reciting such generic, result-oriented computer steps were directed to abstract ideas in *Universal Secure*, *Smart Systems*, and other cases. *See Universal Secure*, 10 F.4th at 1352 (claims for authenticating user to control access did not require "improv[ing] any underlying technology")

---

[3] *See also* Ex. 1 at 16-17 (prosecution history) (explaining purported invention "does not have any algorithm or circuitry that checks the size of the package").

(citation omitted); *Smart Systems*, 873 F.3d at 1369-72 (claims for "receiving" data, "verifying" by matching to stored data, and "denying access" are "directed to the collection, storage, and recognition of data"—an "abstract idea," not any "specific means or method" for improving technology).  The same is true here.  Far from any specific advance in technology, claim 1 uses generic components "as a tool" to perform the abstract idea of authorizing access to a secure location upon verifying a user's credentials.  *Smart Systems*, 873 F.3d at 1372 (citation omitted).[4]

Claim 1 is directed to an abstract idea at step one.

**B.    *Alice* Step Two: Claim 1 Adds Nothing Inventive To The Abstract Idea**

At *Alice* step two, the Court must determine whether claim 1 adds something significant "apart from" the abstract idea—an inventive concept that constitutes a specific technological improvement.  *Chamberlain*, 935 F.3d at 1348-49 (cleaned up).  Claim 1 does not.  Instead, it implements the abstract idea using "well-understood, routine, conventional components."  *Yu v. Apple Inc.*, 1 F.4th 1040, 1045 (Fed. Cir. 2021).

_____

[4] Thus, claim 1 is unlike the "specific … improvement[s] in computer capabilities"—particular solutions to technological problems—that the Federal Circuit has found eligible at step one.  *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016) (specific improved database technology); *see also CardioNet, LLC v. InfoBionic, Inc*, 955 F.3d 1358 (Fed. Cir. 2020) (specific improved medical device technology); *McRO, Inc. v. Bandai Namco Games America Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016) (specific improved animation technology).

<u>First</u>, claim 1 recites computer and electrical components—a computer processor, an electronic lock, a switch, and a circuit—that the specification treats as conventional. *See supra* at 3-6, 14-15. Because "the specification 'describes the components and features listed in the claims generically,' it 'support[s] the conclusion that these components and features are conventional.'" *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1358 (Fed. Cir. 2024) (citation omitted). And these are the same sort of "functional and generic" conventional components that, although tangible, add nothing inventive at *Alice* step two. *Alice*, 573 U.S. at 226; *see, e.g.*, *ChargePoint*, 920 F.3d at 774-75. Reciting a "lock interface" also adds nothing inventive—it can be a generic computer component with a "processor" for controlling access to the storage room by unlocking the door based on user credentials (*supra* at 3-6, 14-15)—like in other claims the Federal Circuit found non-inventive. *See, e.g.*, *Ericsson*, 955 F.3d at 1326-27, 1330 (software "interface" for controlling access to mobile device); *Chamberlain*, 935 F.3d at 1348-49 (software for controlling garage door); *Smart Systems*, 873 F.3d at 1371-72 (software for controlling access to transit system).

<u>Second</u>, beyond that, claim 1 recites only generic, functional computer steps for receiving, validating, and granting or denying a request, and sending signals to automatically control a lock (*supra* at 5-6, 15)—with no details about how to implement them—which also add nothing inventive. *See, e.g.*, *Ericsson*, 955 F.3d

17

at 1328-30 (computerized steps for granting or denying access are non-inventive); *Universal Secure*, 10 F.4th at 1350, 1352-53, 1355, 1357-58 (same); *Smart Systems*, 873 F.3d at 1373-75 (same).  Nor does matching data based on user information (an identification and a code) add anything inventive.  *See, e.g.*, *Trinity*, 72 F.4th at 1365-68 (matching user information is non-inventive).

Third, even when these basic features are viewed "as an ordered combination," there is no "specific implementation" or "specific improvement" in computer technology that might provide an inventive concept.  *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility, LLC*, 827 F.3d 1341, 1348-49 (Fed. Cir. 2016).  Collectively, "the computer components of [the claimed] method 'ad[d] nothing ... that is not already present when the steps are considered separately.'" *Alice*, 573 U.S. at 225 (citation omitted).  Instead, the generalized computerized components and steps for authorizing access to a storage room by matching the user's credentials merely "use[] a combination of conventional components in a conventional way to achieve an expected result"—granting access (and unlocking a door) if a user is authorized.  *Universal Secure*, 10 F.4th at 1350.

Claim 1 adds nothing inventive to the abstract access-control idea.

## C.    The Other Claims Are Directed To The Same Abstract Idea And Add Nothing Inventive

The other claims are not materially different for purposes of § 101—they are directed to the same abstract idea as claim 1 at step one and add nothing inventive at

18

step two, as discussed below.  Accordingly, the Court can appropriately treat claim

1 as representative.  *See Mobile Acuity Ltd. v. Blippar Ltd*., 110 F.4th 1280, 1290

(Fed. Cir. 2024) (court can use representative claim where there is no "distinctive

significance" of any other claim limitations); *Content Extraction & Transmission*

*LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (court can use

representative claim when all claims are "substantially similar and linked to the same

abstract idea").  But the other claims are ineligible even considered individually.

First, the other six independent claims (claims 2, 5-7, 19, 20) are not

materially different for § 101 purposes.  Claims 6, 19, and 20 are virtually identical

to claim 1, with only trivial wording changes (such as reciting "stored data" instead

of "data stored in the lock interface").  Claim 7 is also the same, except recited as a

method instead of a system, which makes no difference.  *See Alice*, 573 U.S. at 226

(computer "method" and "system" claims "fail for substantially the same reasons"

as they are "no different … in substance").  The remaining two independent claims

are similar, except *omitting* certain steps and adding only generic components: a

"power source," "receiver" to receive the wireless signals, "capacitors" (claim 2)

and "electric wires" (claim 5).  The specification treats those as generic and they do

not confer eligibility.  *See, e.g*., '675 patent at 12:21-25, 12:33-46; *ChargePoint*, 920

F.3d at 766-72 (ineligible claims recited "tangible" components such as power

source, electric power line, electrical coupler, network signal transceiver); *WiTrcity*

*Corp. v. Momentum Dynamics Corp.*, 563 F. Supp. 3d 309, 318 (D. Del. 2021) (same: capacitor, inductor, and circuit).

Second, most dependent claims likewise add only generic components and features: (i) the storage room has multiple users (claims 11, 16), storage receptables (claim 12) of various sizes (claim 13), or only one storage space (claim 16); (ii) the door is an outer door or opaque (claims 14, 15); (iii) the lock has a circuit with an electronic switch and signal input port (claims 3 and 22, repeating limitations from claim 1), a solenoid (claim 4), a striker (claims 8 and 21); (iv) the system includes a "voltage converter" (claim 24) and "capacitive filter" (claims 25 and 26); and (v) the authentication is done via a "server" or "equipment" (claims 17, 18).

The specification treats all of those as generic features and off-the-shelf electrical components, not requiring any improved technology. *See*, *e.g.*, '675 patent at 7:39-52, 11:43-59, 12:47-13:13, 14:35-52, 27:50-28:23; *Beteiro*, 104 F.4th at 1358. Such features do not make claims non-abstract or add anything inventive. *See, e.g.*, *ChargePoint*, 920 F.3d at 766-72 (ineligible claims recited electrical components and server); *CardioNet, LLC v. InfoBionic, Inc.*, No. 20-2123, 2021 WL 5024388 (Fed. Cir. 2021) (ineligible claims recited "T wave filter").

Third, the other two dependent claims also add nothing meaningful: claim 9 recites automatically relocking the door after delivery and claim 10 recites authorizing a *pickup* request. Those are just facets of the abstract access-control

idea—more routine human activity—which does not confer eligibility. *See Universal Secure*, 10 F.4th at 1350 ("an abstract idea … cannot serve as an inventive concept"); *PersonalWeb*, 8 F.4th at 1317 ("Stringing together the claimed steps by '[a]dding one abstract idea … to another,' … amounts merely to [an] abstract idea …." (citation omitted).

All claims are directed to the same abstract idea (authorizing access to a secure location upon verification of a user's credentials) and add nothing inventive—and thus fail under *Alice*.

### D.    There Is No Reason To Delay Holding The Claims Ineligible

Patent eligibility under § 101 "may be, and frequently has been, resolved on a Rule 12(b)(6) … motion." *SAP*, 898 F.3d at 1166. Where, as here, there are no "plausible factual allegations [that could] preclude dismiss[al] … under § 101," it is "proper to determine patent eligibility … on a Rule 12(b)(6) motion." *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016); *see also Trinity*, 72 F.4th at 1361 (affirming dismissal where patentee failed to identify "a proposed claim construction or specific facts" that would impact the § 101 analysis).

That is appropriate here, too—there is no plausible allegation of inventiveness outside the abstract realm. The claims focus not on any specific technological improvement, but on generic steps for authorizing access to a storage room, like the ones the Federal Circuit held abstract at step one in *Ericsson*, *Universal Secure*,

21

*Smart Systems*, and the other cases discussed. *Supra* at 10-15, 18-21. And the patent itself confirms that the claims require only conventional, non-inventive components and technologies to implement that abstract idea at step two, *supra* at 16-21, again like other claims that the Federal Circuit has deemed ineligible at the pleadings stage. *See Universal Secure*, 10 F. 4th at 1353; *Smart Systems*, 873 F.3d at 1366-67, 1374-75; *Repifi Vendor Logistics*, 2022 WL 794981 at *3. No plausible claim construction could change that. *See Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 703-04 (Fed. Cir. 2023) ("court need not engage in claim construction" where claims ineligible under any "plausible construction").

Nor do any material fact disputes preclude ineligibility. The specification and Complaint do not, and cannot, "plausibly allege" the claims provide any genuine technological improvements or inventive features apart from the abstract access-control idea. *SAP*, 898 F.3d at 1163. First, as discussed above, the specification highlights that the purported advance is controlling access to a storage room—which is the abstract concept—and admits that the claims require only conventional components with no particular implementation. *See supra* at 3-5, 14-18. Any unclaimed details in the specification are "irrelevant." *Am. Axle*, 967 F.3d at 1293; *see, e.g.*, *Ericsson*, 955 F.3d at 1328-29 (unclaimed details from specification cannot confer eligibility). Second, the Complaint does not try to allege eligibility. *Cf. Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1127-28 (Fed.

22

Cir. 2018) (detailed allegations of improved computer technology, captured in claims, precluded dismissal).    Instead, the Complaint describes the purported invention as "add[ing] a layer of controlled access to a package room" using an "access code" (Compl. ¶ 11)—which is the abstract idea and cannot supply the patent-eligible subject matter.  *See Simio*, 983 F.3d at 1364; *SAP*, 898 F.3d at 1163.

Although it is "sometimes difficult to analyze patent eligibility," that is not the case here—the "alleged invention does not require … a difficult line-drawing exercise for a claimed invention resting on, or anywhere near, the margins of patent-eligibility." *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc*., 876 F.3d 1372, 1379 (Fed. Cir. 2017).  The Federal Circuit has held materially indistinguishable claims for controlling access ineligible as a matter of law in numerous cases, including on Rule 12(b)(6) motions.  The same outcome follows here.

## VI.    CONCLUSION

The Complaint should be dismissed with prejudice under § 101.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

_____

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Defendant ButterflyMX, Inc.*

OF COUNSEL:

Richard G. Frenkel
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA  94025
(650) 328-4600

Gregory K. Sobolski
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA  94111
(415) 391-0600

Nicole Elena Bruner
Gabriel K. Bell
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C.  20004
(202) 637-2200

October 24, 2024

24

## <u>CERTIFICATE OF COMPLIANCE</u>

The foregoing document complies with the type-volume limitation of this Court's November 10, 2022 Standing Order Regarding Briefing In All Cases (D.I. 11). The text of this brief was prepared in Times New Roman, 14 point font. According to the word processing system used to prepare it, the brief contains 4,999 words, excluding case caption, signature blocks, table of contents, and table of authorities.

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 24, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 24, 2024, upon the following in the manner indicated:

Karen E. Keller, Esquire                         *VIA ELECTRONIC MAIL*
Andrew E. Russell, Esquire
Emily S. DiBenedetto, Esquire
Lindsey M. Gellar, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Plaintiff*

Jason W. Balich, Esquire                        *VIA ELECTRONIC MAIL*
Michael Albert, Esquire
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue, 23rd Floor
Boston, MA  02210
*Attorneys for Plaintiff*


                                        */s/ Jeremy A. Tigan*
                                        _____
                                        Jeremy A. Tigan (#5239)