IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LUXER CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 24-602 (JCG) |
| | ) | |
| BUTTERFLYMX, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**BUTTERFLYMX'S REPLY BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

OF COUNSEL:

Richard G. Frenkel
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA  94025
(650) 328-4600

Gregory K. Sobolski
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA  94111
(415) 391-0600

Nicole Elena Bruner
Gabriel K. Bell
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C.  20004
(202) 637-2200

December 5, 2024

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jeremy A. Tigan (#5239)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jtigan@morrisnichols.com
began@morrisnichols.com

*Attorneys for Defendant ButterflyMX, Inc.*

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................1

II.    ARGUMENT...........................................................................................2

    A.    Step One: Claim 1 Is Abstract Like Other Access-Control
        Claims...........................................................................................2

        1.    Reciting "Physical Parts" Does Not Make Claims
            Eligible ...........................................................................2

        2.    Luxer Identifies No "Specific Way" Of Controlling
            Access ...........................................................................4

        3.    Using A Large Room Does Not Improve Technology ...............5

        4.    Luxer Cannot Evade Federal Circuit Precedent Holding
            Similar Access-Control Claims Ineligible ..................................6

    B.    Step Two: Luxer Identifies No Inventive Concept Or Fact Issue.......10

    C.    Luxer Concedes Claim 1 Is Representative .......................................11

III.   CONCLUSION.............................................................................................11

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*AI Visualize, Inc. v. Nuance Comm'ns, Inc.*,
   97 F.4th 1371 (Fed. Cir. 2024) ..................................................5, 7, 11

*Alice Corp. Pty. Ltd. v. CLS Bank International*,
   573 U.S. 208 (2014)..................................................................*passim*

*Bascom Global Internet Services, Inc. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016) ....................................................10, 11

*CardioNet, LLC v. InfoBionic, Inc.*,
   955 F.3d 1358 (Fed. Cir. 2020) ...........................................................9

*Chamberlain Group, Inc. v. Techtronic Industries Co.*,
   935 F.3d 1341 (Fed. Cir. 2019) ...........................................................3

*CLS Bank Int'l v. Alice Corp. Pty. Ltd.*,
   717 F.3d 1269 (Fed. Cir. 2013) (en banc) (Lourie, J., concurring).....................7

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
   776 F.3d 1343 (Fed. Cir. 2014) ...........................................................3

*cxLoyalty, Inc. v. Maritz Holdings Inc.*,
   986 F.3d 1367 (Fed. Cir. 2021) ...........................................................6

*Ericsson Inc. v. TCL Communication Technology Holdings Limited*,
   955 F.3d 1317 (Fed. Cir. 2020) ....................................................2, 7, 8

*Hawk Technology System, LLC v. Castle Retail, LLC*,
   60 F.4th 1349 (Fed. Cir. 2023) ...........................................................7

*McRO, Inc. v. Bandai Namco Games America Inc.*,
   837 F.3d 1299 (Fed. Cir. 2016) ...........................................................9

*Mobile Acuity Ltd. v. Blippar Ltd.*,
   110 F.4th 1280 (Fed. Cir. 2024) .........................................................11

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   572 U.S. 898 (2014)........................................................................11

*Pac. Biosciences of Cal., Inc. v. Oxford Nanopore Techs., Inc.*,
  2018 WL 1419082 (D. Del. Mar. 22, 2018) .........................................................6

*Simio, LLC v. FlexSim Software Products, Inc.*,
  983 F.3d 1353 (Fed. Cir. 2020) ....................................................................6, 11

*Smart Systems Innovations, LLC v. Chicago Transit Authority*,
  873 F.3d 1364 (Fed. Cir. 2017) .............................................................2, 5, 7, 9

*Universal Secure Registry LLC v. Apple Inc.*,
  10 F.4th 1342 (Fed. Cir. 2021) ............................................................2, 4, 8, 10

## I.    INTRODUCTION

Luxer's patent claims are ineligible under § 101 and *Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014), because they (1) are directed to a classic abstract idea (authorizing access to a secure location upon verification of a user's credentials) and (2) add nothing inventive (using only admittedly conventional computer and electric lock components).  D.I. 27 ("Br.") 10-18.  Indeed, as ButterflyMX explained, the Federal Circuit has repeatedly held that computerized claims for controlling access to software or physical resources are abstract and ineligible.  Br.12-16.  Luxer's claims are no different.

Luxer's opposition (D.I. 30, "Opp.") does not undermine that conclusion.  Instead, it relies on outdated legal propositions that *Alice* and its progeny long since refuted.  Luxer's lead argument, for example, is that its claims survive simply because they recite a "machine" with "physical parts."  Opp.3-5.  *Alice* rejected that.  Luxer similarly contends that analysis for system claims differs from method claims.  Opp.11-13.  *Alice* rejected that too.  Luxer further argues that it is "not relevant" whether individual claim elements are conventional.  Opp.10.  Again, *Alice* says otherwise.  At seemingly every turn, Luxer runs headlong into *Alice*.

Moreover, Luxer identifies no purported *technological* improvement.  Luxer's own description of its claims boils down to using computers to unlock a door based on user credentials—the abstract idea.  And, tellingly, the *only* purported advance

1

that Luxer identifies is using a large storage room to allow delivery of large packages. That is an abstract concept, not a technological advance. Luxer identifies no fact issue or reason to forestall ineligibility. The Complaint should be dismissed.

## II. ARGUMENT

### A. Step One: Claim 1 Is Abstract Like Other Access-Control Claims

Luxer does not dispute that representative claim 1's central point is authorizing access to a location upon verifying a user's credentials. Luxer also does not dispute that this is a longstanding concept, akin to showing an identification to enter a secure area or entering an identification code into a keypad to open a garage door. Nor does Luxer dispute that the Federal Circuit has "repeatedly found the concept of controlling access to resources via software to be an abstract idea," including in *Ericsson Inc. v. TCL Communication Technology Holdings Limited*, 955 F.3d 1317 (Fed. Cir. 2020), *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342 (Fed. Cir. 2021), and *Smart Systems Innovations, LLC v. Chicago Transit Authority*, 873 F.3d 1364, 1371 (Fed. Cir. 2017). It follows that claim 1 is likewise directed to an abstract idea. Yet Luxer seeks to avoid that straightforward conclusion for four reasons, each of which fails.

#### 1. Reciting "Physical Parts" Does Not Make Claims Eligible

Luxer's lead argument is that claim 1 is eligible because it "recites a machine with *physical parts*." Opp.3. But *Alice* rejected that notion: that a claim

2

"'necessarily exist[s] in the physical … realm' is beside the point." 573 U.S. at 224. Although "a computer is a tangible system (in § 101 terms, a 'machine')," that is *not* "the end of the § 101 inquiry," lest "the determination of patent eligibility 'depend simply on the draftsman's art.'" *Id.* (citation omitted). Rather, under *Alice*, courts determine whether claims are ineligible *despite* their physical parts.

Luxer further argues that claim 1 recites "not just a general-purpose computer," but other "physical components." Opp.14. But the Federal Circuit rejected that argument a decade ago. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (rejecting patentee's "attempts to distinguish its claims from those found to be abstract in *Alice* and other cases by showing that its claims require not only a computer but also an additional machine"). Here, claim 1's physical parts (Opp.3-5) merely implement the abstract idea in a "technological environment" using "off-the-shelf technology for its intended purpose." *Chamberlain Group, Inc. v. Techtronic Industries Co*., 935 F.3d 1341, 1348 (Fed. Cir. 2019). Claim 1's "lock interface" can be any generic "computer system" that controls the lock; and the lock and door are likewise generic. Br.4-5, 14-15. Reciting the necessary lock parts (a "circuit" with a "switch" to open the lock and communications "ports" to receive commands via any type of communications) adds nothing meaningful—the specification treats those as generic, too. Br.14-15; '675 patent at 6:14-25, 6:35-38, 9:10-14, 14:16-24, 14:35-

52.   The Federal Circuit routinely holds ineligible claims with similar generic physical parts, including locks, doors, and communication circuits.  Br.13-14.

## 2.    Luxer Identifies No "Specific Way" Of Controlling Access

Luxer next contends that claim 1 requires a "specific way of controlling access to a storage room."  Opp.5.  But Luxer's purported "specifics" are merely basic functions for the abstract idea of providing access based on user credentials: (1) providing user information ("identity" and "code") in requesting access, (2) verifying access ("comparing" to stored data), (3) providing access (unlocking) accordingly, and (4) conveying the information via signals.  Opp.5-6.[1]  And those are the same generic features in other ineligible access-granting claims.  Br.14-16.

For example, in *Universal Secure*, the court held ineligible a detailed "system for authenticating a user" by (1) providing the user's biometric identification information, (2) verifying the user is authorized for a transaction, (3) "enabl[ing]" the transaction accordingly, and (4) conveying the information using "signals" from two different devices.  10 F.4th at 1355-56.  The court also held ineligible an "electronic ID device" claim with "a biometric sensor, user interface, communication interface, and processor working together to … authenticate the user based on two factors—biometric information and secret information known to the user—and … generate encrypted authentication information."  *Id.* at 1352; Att.A;

---

[1] ButterflyMX's description is similar.  Br.10; *cf.* Opp.9.

4

*see also Smart Systems*, 873 F.3d at 1369-72 (ineligible claims for providing access to transit system); Att.B.  The claims here are likewise abstract.  Br.12-16 & n.2.

Luxer further states the claims require storing the data locally, not in a server. Opp.6.  That is irrelevant.  *See AI Visualize, Inc. v. Nuance Comm'ns, Inc*., 97 F.4th 1371, 1375 (Fed. Cir. 2024) (ineligible "system" claims recited "local data storage").

### 3.     Using A Large Room Does Not Improve Technology

Luxer argues that claim 1 provides a technological advance because it allows a delivery person access regardless of package size.  Opp.6, 9-10.  But Luxer admitted this entails no improved circuitry or algorithm—i.e., it means "simply <u>not</u> having anything in the algorithm/circuitry that prevents the opening of the door based on the package size,"  Br.Ex.1 at 16—and requires only "a room that is reasonably large size that one could walk into and that could accommodate items of many sizes and shapes," Opp.Ex.1 at 192; *see* Compl. ¶25; '675 patent at 22:38-45. Using a large room and *omitting* storage-restriction rules is not a technological advance.  Indeed, granting access to the storage room regardless of package size is part of the abstract idea, as people have long used large storage rooms to alleviate space constraints—and thus cannot confer eligibility.  *See* Br.9, 11.

This Court does *not* "presume[] true" (Opp.8) Luxer's assertion during prosecution that using a large room is a "technological advance" (an allegation found nowhere in the specification or Complaint).  Rather, the Court "disregard[s]

conclusory statements" when evaluating § 101 ineligibility "under Rule 12(b)(6)," including baseless assertions of technological "improve[ments]" that "repackage" abstractions. *Simio, LLC v. FlexSim Software Products, Inc*., 983 F.3d 1353, 1364-65 (Fed. Cir. 2020); *see Pac. Biosciences of Cal., Inc. v. Oxford Nanopore Techs., Inc*., 2018 WL 1419082, *3 (D. Del. Mar. 22, 2018) ("bald assertions" not "accept[ed] as true"). At most, as discussed, Luxer's asserted feature is part of the abstract idea. So even assuming that was not in prior systems, that would impact *novelty* under § 102, not *eligibility* under § 101. *Simio*, 983 F.3d at 1364 (ineligible "even assuming" novelty over prior systems, which is "distinct" from eligibility).

Moreover, the Examiner did not meaningfully explain why he believed certain claims satisfied § 101. *See* Opp.Ex.1 at 19, 225; *contra* Opp.5, 8. Regardless, the Patent Office's view "does not carry the force of law, and is not binding on [courts'] patent eligibility analysis." *cxLoyalty, Inc. v. Maritz Holdings Inc*., 986 F.3d 1367, 1375-76 n.1 (Fed. Cir. 2021). The Federal Circuit routinely holds access-control claims such as these ineligible as a matter of law. This Court should follow suit.

### 4. Luxer Cannot Evade Federal Circuit Precedent Holding Similar Access-Control Claims Ineligible

Luxer attempts to—but cannot—evade the substantial precedent holding similar access-control claims ineligible, such as *Universal Secure*, *Smart Systems*, and *Ericsson*. Br.12-13 & n.2, 15-16.

First, Luxer contends that decisions finding computer "*method* claims" ineligible "are not instructive" regarding "a tangible *system* with *physical* parts." Opp.11-12. That is wrong. *Despite* facial "differen[ces]" between method and system claims, "the *same analysis* should apply regardless of claim format." *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1289-90 (Fed. Cir. 2013) (en banc) (Lourie, J., concurring) (emphasis added); *supra* at 2-4. Indeed, *Alice* held that "the system claims are no different from the method claims in substance" and "fail for substantially the same reasons." 573 U.S. at 226. Likewise, the Federal Circuit routinely finds system claim analogous to ineligible method claims. For example, in *Ericsson*, 955 F.3d at 1327, the court found system claims for controlling access ineligible, likening them to ineligible methods in *Smart Systems*, 873 F.3d at 1371. And in *AI Visualize*, 97 F.4th at 1375-76, 1378, the court found detailed system claims with multiple physical features ("security device," "resource manager device," "physically secured site," "transmitter," "central data storage," "servers," Att.C) ineligible, likening them to ineligible methods in *Hawk Technology System, LLC v. Castle Retail, LLC*, 60 F.4th 1349 (Fed. Cir. 2023).

Luxer's fictional distinction between system and method claims is especially inapt here. Claim 1 recites a "system" that uses a computer "processor … to implement a method" with a series of steps for granting access to a storage room, '675 patent at 57:48-53, and Luxer does not dispute that claim 7 recites those same

features as a "method." *See* Br.19.  Luxer cannot avoid the substantial, dispositive body of caselaw finding computer access-control claims ineligible.[2]

Second, Luxer tries to sidestep *Ericsson* and other decisions finding computer system claims ineligible because they involved only generic components performing generic functions or a particular field of use.  Opp.13-18.  But the same is true here.  Br.4-5, 14-16; *supra* at 2-5.

Luxer's attempt to distinguish *Ericsson* is particularly misguided.  Luxer contends that in *Ericsson* the ineligible system claims controlled access to software, not "to a ***physical*** location like a storage room."  Opp.14.  But that makes Luxer's claims *more* abstract, not less.  Indeed, the *Ericsson* court found the claims abstract because controlling access is "pervasive in human activity," like when *physical locations* ("buildings") "allow[] certain employees entrance to only certain floors." 955 F.3d at 1327.  The Federal Circuit also found ineligible claims for controlling access to physical locations in cases such as *Smart Systems*, *Repifi*, and *Consumer*. Br.12-13 & n.2.  The same outcome follows here.

Third, Luxer relies on *McRO* and *CardioNet*, but neither supports eligibility. Opp.18-20.  In *McRO, Inc. v. Bandai Namco Games America Inc.*, the eligible claims

---

[2] Even worse, Luxer inaccurately states that *Universal Secure* analyzed only "*method* claims, not *system* claims."  Opp.12.  The court also analyzed *system* and *device* claims.  *Supra* at 4-5; Att.A.

provided a detailed technological improvement in computer animation by: (1) using rules that "define[d] output morph weight set stream as a function of phoneme sequence and time," (2) "obtaining a timed data file of phonemes" with "subsequences," (3) "generating an intermediate stream of output morph weight sets" and "transition parameters between two adjacent morph weight sets," (4) "generating a final stream of output morph weight sets at a desired frame rate," and (5) applying the stream "to a sequence of animated characters." 837 F.3d 1299, 1307-08 (Fed. Cir. 2016). Nothing approaches such specificity or technological solution here—claim 1 merely uses generic components and functions for access-control, like other ineligible claims. *See*, *e.g*., *Smart Systems*, 873 F.3d at 1373 (distinguishing *McRO*).

In *CardioNet, LLC v. InfoBionic, Inc*., the claims recited certain medical device technology for diagnosing atrial fibrillation by taking into account premature ventricular beats, and there was "no suggestion" in the intrinsic record that humans previously used that technique. 955 F.3d 1358, 1364-70 (Fed. Cir. 2020). In contrast, providing access based on user credentials is undisputedly a longstanding concept. Claim 1 falls squarely under the Federal Circuit's precedent finding similar access-control claims abstract at step one.

9

**B.    Step Two: Luxer Identifies No Inventive Concept Or Fact Issue**

Luxer makes little effort to show an inventive concept apart from the abstract idea, or any relevant factual dispute.  Opp.21-22.  Luxer does not dispute that claim 1 requires only generic, conventional components—e.g., a processor and electronic lock.  Opp.21-22.  Instead, Luxer insists that looking at "individual components" is "not relevant."  Opp.10-11.  But *Alice* held otherwise: courts *must* "consider the elements of each claim both individually and 'as an ordered combination'" to determine whether they add anything inventive apart from the abstract idea.  *Alice*, 573 U.S. at 217 (citation omitted).

Luxer highlights only two aspects of claim 1, but neither supplies an inventive concept.  First, Luxer references its prosecution argument that using a large storage room for delivery of large packages is an improvement.  Opp.21.  But that does not support eligibility or create a fact issue, as discussed.  *Supra* at 5-6.  Second, Luxer argues that the combination of elements adds something inventive, but never explains *what.*  Opp.21-22.  Nor could it: the combination adds "nothing ... that is not already present when the steps are considered separately," 573 U.S. at 225; it instead provides the "expected result" of unlocking a door for an authorized user.  *Universal Secure*, 10 F.4th at 1350; *see* Br.18.  In *Bascom Global Internet Services, Inc. v. AT&T Mobility LLC*, the court held that the combination provided a specific technological improvement for customizing and filtering internet traffic at an ISP.

827 F.3d 1341 (Fed. Cir. 2016).  There is no such technological improvement here. The claims use conventional technology to unlock a door based on user credentials— an abstract idea.

Accordingly, there is no inventive concept or material factual allegations—in the Complaint or otherwise—precluding finding ineligibility.  *See* Br.21-23; *AI Visualize*, 97 F.4th at 1380-81; *Simio*, 983 F.3d at 1364-65.  In turn, Luxer's repeated invocation of the "clear and convincing eviden[tiary]" burden (e.g., Opp.21) fails. That is relevant only for "disputed issues of fact," *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 912 n.10 (2014), and there are none here.  As in cases such as *Universal Secure*, *Smart Systems*, and *Ericsson*, Luxer's access-control claims are ineligible as a matter of law on the intrinsic record.

## C.    Luxer Concedes Claim 1 Is Representative

Luxer does not dispute that claim 1 is representative.  Br.18-19; Opp.22.  As Luxer does not identify any "distinctive significance of any [other] claim limitations," this Court can treat it as representative.  *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1290 (Fed. Cir. 2024).  Even considered individually, the other claims are ineligible, as ButterflyMX explained.  Br.18-19.

## III.    CONCLUSION

The Complaint should be dismissed with prejudice.

11

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

_____

OF COUNSEL:

Richard G. Frenkel
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA  94025
(650) 328-4600

Gregory K. Sobolski
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA  94111
(415) 391-0600

Nicole Elena Bruner
Gabriel K. Bell
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C.  20004
(202) 637-2200

December 5, 2024

Jeremy A. Tigan (#5239)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jtigan@morrisnichols.com
began@morrisnichols.com

*Attorneys for Defendant ButterflyMX, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

The foregoing document complies with the type-volume limitation of this Court's November 10, 2022 Standing Order Regarding Briefing In All Cases (D.I. 11).   The text of this brief was prepared in Times New Roman, 14 point font. According to the word processing system used to prepare it, the brief contains 2,500 words, excluding case caption, signature blocks, table of contents, and table of authorities.

/s/ Jeremy A. Tigan
_____
Jeremy A. Tigan (#5239)

13

**ATTACHMENT A**

Ineligible Claim from *Universal Secure*, 10 F.4th at 1351-52
U.S. Patent No. 8,577,813, cl. 1

**1.** An electronic ID device configured to allow a user to select any one of a plurality of accounts associated with the user to employ in a financial transaction, comprising:

a biometric sensor configured to receive a biometric input provided by the user;

a user interface configured to receive a user input including secret information known to the user and identifying information concerning an account selected by the user from the plurality of accounts;

a communication interface configured to communicate with a secure registry;

a processor coupled to the biometric sensor to receive information concerning the biometric input, the user interface and the communication interface, the processor being programmed to activate the electronic ID device based on successful authentication by the electronic ID device of at least one of the biometric input and the secret information, the processor also being programmed such that once the electronic ID device is activated the processor is configured to generate a non-predictable value and to generate encrypted authentication information from the non-predictable value, information associated with at least a portion of the biometric input, and the secret information, and to communicate the encrypted authentication information via the communication interface to the secure registry; and

wherein the communication interface is configured to wirelessly transmit the encrypted authentication information to a point-of-sale (POS) device, and wherein the secure registry is configured to receive at least a portion of the encrypted authentication information from the POS device.

Ineligible Claim from *Universal Secure*, 10 F.4th at 1356
U.S. Patent No. 9,530,137, cl. 12

**12.** A system for authenticating a user for enabling a transaction, the system comprising:

a first device including:

a biometric sensor configured to capture a first biometric information of the user;

a first processor programmed to: 1) authenticate a user of the first device based on secret information, 2) retrieve or receive first biometric information of the user of the first device, 3) authenticate the user of the first device based on the first biometric, and 4) generate one or more signals including first authentication information, an indicator of biometric authentication of the user of the first device, and a time varying value; and

a first wireless transceiver coupled to the first processor and programmed to wirelessly transmit the one or more signals to a second device for processing;

wherein generating the one or more signals occurs responsive to valid authentication of the first biometric information; and

wherein the first processor is further programmed to receive an enablement signal indicating an approved transaction from the second device, wherein the enablement signal is provided from the second device based on acceptance of the indicator of biometric authentication and use of the first authentication information and use of second authentication information to enable the transaction.

## ATTACHMENT B

Ineligible Claim from *Smart Systems*, 873 F.3d at 1369
U.S. Patent No. 7,568,617, cl. 13

**13.**   A method for validating entry into a first transit system using a bankcard terminal, the method comprising:

downloading, from a processing system associated with a set of transit systems including the first transit system, a list of bankcards comprising, for each bankcard in the list, a hash identifier of a bankcard previously presented, by a respective holder of the bankcard, to the processing system, wherein the bankcard comprises one of a credit card and a debit card;

receiving, from a bankcard reader, bankcard data comprising data from a bankcard currently presented by a holder of the bankcard;

generating a hash identifier based on the bankcard data from the currently presented bankcard, wherein the hash identifier comprises a hash of at least part of the bankcard data;

determining whether the currently presented bankcard is contained in the list of bankcards;

verifying the currently presented bankcard with a bankcard verification system, if the bankcard was not contained in the list of bankcards; and

denying access, if the act of verifying the currently presented bankcard with the bankcard verification system results in a determination of an invalid bankcard.

**ATTACHMENT C**

Ineligible Claim from *AI Visualize*, 97 F.4th at 1376-77
U.S. Patent No. 9,106,609, cl. 1

**1.** A system for viewing at a client device at a remote location a series of three-dimensional virtual views over the Internet of a volume visualization dataset contained on at least one centralized database comprising:

at least one transmitter for accepting volume visualization dataset from remote location and transmitting it securely to the centralized database;

at least one central data storage medium containing the volume visualization dataset;

a plurality of servers in communication with the at least one centralized database and capable of processing the volume visualization dataset to create virtual views based on client request;

a resource manager device for load balancing the plurality of servers;

a security device controlling the plurality of communications between a client device, and the server; including resource manager and central storage medium;

at least one physically secured site for housing the centralized database, plurality of servers, at least a resource manager, and at least a security device;

a web application adapted to satisfy a user's request for the three-dimensional virtual views by: a) accepting at a remote location at least one user request for a series of virtual views of the volume visualization dataset, the series of views comprising a plurality of separate view frames, the remote location having a local data storage medium for storing frames of views of the volume visualization dataset, b) determining if any frame of the requested views of the volume visualization dataset is stored on the local data storage medium, c) transmitting from the remote location to at least one of the servers a request for any frame of the requested views not stored on the local data

storage medium, d) at least one of the servers, creating the requested frames of the requested views from the volume visualization dataset in the central storage medium, e) transmitting the created frames of the requested views from at least one of the servers to the client device, f) receiving the requested views from the at least one server, and displaying to the user at the remote location the requested series of three-dimensional virtual views of the volume visualization dataset by sequentially displaying frames transmitted from at least one of the servers along with any frames of the requested series of views stored on the local data storage medium.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 5, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 5, 2024, upon the following in the manner indicated:

| | |
|---|---|
| Karen E. Keller, Esquire | *VIA ELECTRONIC MAIL* |
| Andrew E. Russell, Esquire | |
| Emily S. DiBenedetto, Esquire | |
| Lindsey M. Gellar, Esquire | |
| SHAW KELLER LLP | |
| I.M. Pei Building | |
| 1105 North Market Street, 12th Floor | |
| Wilmington, DE  19801 | |
| *Attorneys for Plaintiff* | |

| | |
|---|---|
| Jason W. Balich, Esquire | *VIA ELECTRONIC MAIL* |
| Michael Albert, Esquire | |
| WOLF, GREENFIELD & SACKS, P.C. | |
| 600 Atlantic Avenue, 23rd Floor | |
| Boston, MA  02210 | |
| *Attorneys for Plaintiff* | |

*/s/ Jeremy A. Tigan*

_____

Jeremy A. Tigan (#5239)