## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| **LUXER CORPORATION,** | |
| **Plaintiff,** | |
| **v.** | **Court No. 1:24-cv-00602-JCG** |
| **BUTTERFLYMX, INC.,** | |
| **Defendant.** | |

### OPINION AND ORDER

This matter involves patent infringement claims filed by Luxer Corporation ("Plaintiff" or "Luxer") against ButterflyMX, Inc. ("Defendant" or "ButterflyMX"), alleging infringement of U.S. Patent Number 11,625,675 ("'675 Patent") (D.I. 1-1). Compl. (D.I. 1). Defendant filed ButterflyMX's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6). Def.'s MTD Pursuant Fed. R. Civ. Proc. 12(b)(6) ("Defendant's Motion to Dismiss" or "Def.'s MTD") (D.I 26); Def.'s Opening Br. Supp. MTD Pursuant Fed. R. Civ. Proc. 12(b)(6) ("Def.'s Br.") (D.I. 27). Plaintiff filed Luxer's Opposition to ButterflyMX's Motion to Dismiss. Pl.'s Opp'n ButterflyMX's MTD ("Pl.'s Br.") (D.I. 30). Defendant filed ButterflyMX's Reply Brief in Support of its Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6). Def.'s Reply Br.

Supp. MTD Pursuant Fed. R. Civ. Proc. 12(b)(6) ("Pl.'s Reply") (D.I. 34).  For the

reasons discussed below, ButterflyMX's Motion to Dismiss is granted.

## BACKGROUND

Luxer is a Delaware company that makes products to "automat[e] package

delivery, storage, and retrieval."  Compl. ¶ 9.  In 2015, Luxer began offering the

"Luxer Room," a system for controlling access to a package storage room.  Id.

¶ 11.  The Luxer Room allows package carriers to access a package storage room

using an access code.  Id.  When a package is ready for retrieval, recipients are

notified via text message and provided with a single use access code to access the

package storage room.  Id.  The Luxer Room is monitored by video surveillance

and maintains access logs.  Id.

Luxer is the owner by assignment of the entire right, title, and interest in and

to the '675 Patent, titled "Method and system for controlling a storage room."  Id.

¶¶ 3, 12.  The '675 Patent was issued on April 11, 2023 and "is generally directed

to a system and a method for controlling electronic locks for locking a door of a

storage room that is part of a building."  Id. ¶ 12; '675 Patent Abstract.  The patent

describes a system in which a lock interface determines whether the credentials of

a person attempting to access a package storage room are authentic.  '675 Patent at

Fig. 5, 19:60–20:67.  If the request for access is determined to be valid, a signal is

sent to an electronic lock to allow access to the package storage room.  Id. at Fig.

5, 19:60–20:67.  If the request is determined to be invalid, the electronic lock does not disengage and the user is informed that the request to enter the package storage room has been denied.  Id. at Fig. 5, 20:38–42.

ButterflyMX began in July 2021 to offer its Package Room product.  Compl. ¶¶ 14–15.  ButterflyMX's Package Room controls access to a package storage room with a panel mounted at the package storage room's door that takes a time- and date-stamped picture of the person seeking access.  Id. ¶ 16.  Couriers may access the package storage room by entering a personal identification number ("PIN") into the panel.  Id. ¶ 17.  After a package has been delivered, the recipient is notified via text message, email, or a push notification.  Id. ¶¶ 16–17.  The recipient is able to access the package storage room using their PIN.  Id. ¶¶ 16–17.

Luxer filed this action alleging infringement of the '675 Patent and seeking injunctive relief and monetary damages.  Compl.  ButterflyMX filed its Motion to Dismiss arguing that the '675 Patent's claims are ineligible for patent protection under 35 U.S.C. § 101.  Def.'s MTD.  Oral argument was held on ButterflyMX's Motion to Dismiss on December 16, 2024.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that pleadings contain a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. Proc. 8(a)(1).  If pleadings fail to state a claim, in whole or in part, on

which a court may grant relief, a defendant may seek to dismiss a complaint under

Federal Rule of Civil Procedure 12(b)(6).  Fed. R. Civ. Proc. 12(b)(6).  "To survive

a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556

U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

(2007)).  "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged."  Id.  Plausibility requires "more than a sheer

possibility that a defendant has acted unlawfully."  Id.  In considering a motion to

dismiss, the Court must assume the factual allegations contained in the complaint

to be true and draw all reasonable inferences in favor of the non-moving party.

Twombly, 550 U.S. at 555–56.  However, "[t]hreadbare recitals of the elements of

a cause of action, supported by mere conclusory statements, do not suffice" to state

a claim.  Iqbal, 556 U.S. at 679.

In patent infringement cases, allegations of infringement are governed by the

Iqbal/Twombly pleading standard.  Golden v. Apple Inc., 819 F. App'x 930, 930–

31 (Fed. Cir. 2020).  There must be some factual allegations that, when taken as

true, articulate why it is plausible that the accused product infringes the patent

claim.  Bot M8 LLC v. Sony Corp., 4 F.4th 1342, 1353 (Fed. Cir. 2021).

## DISCUSSION

ButterflyMX moves to dismiss the lone claim of patent infringement,

arguing that the '675 Patent's claims are directed at a subject matter that is

ineligible for patent protection under 35 U.S.C. § 101.  Def.'s MTD; Def.'s Br. at

1.

35 U.S.C. § 101 makes patentable "any new and useful process, machine,

manufacture, or composition of matter, or any new and useful improvement

thereof."  35 U.S.C. § 101.  This broad provision has an important exception:

"[l]aws of nature, natural phenomena, and abstract ideas are not patentable."  Alice

Corp. Pty. Ltd. v. CLS Bank Int'l ("Alice"), 573 U.S. 208, 216 (2014).  The

purpose of these exceptions is to protect the "basic tools of scientific and

technological work."  Mayo Collaborative Servs. v. Prometheus Labs., Inc.

("Mayo"), 566 U.S. 66, 71 (2012).  Eligibility "is a question of law" with

"underlying questions of fact."  Simio, LLC v. FlexSim Software Prods., Inc., 983

F.3d 1353, 1358–59 (Fed. Cir. 2020).

In Alice Corporation Pty. Ltd. v. CLS Bank International, 573 U.S. 208

(2014), the U.S. Supreme Court reaffirmed the two-step framework set forth in

Mayo Collaborative Services v. Prometheus Laboratories, Inc., 566 U.S. 66 (2012),

for distinguishing patents that claim ineligible subject matter from those that claim

patent-eligible applications of those concepts.  Alice, 573 U.S. at 217.  In step one,

the court must determine whether the claims are drawn to a patent-ineligible

concept, such as an abstract idea.  Id.  To do so, the court examines the focus of the

claim and its character as a whole.  SAP Am., Inc. v. InvestPic, LLC, 898 F.3d

1161, 1167 (Fed. Cir. 2018).

If the claims are drawn to an abstract idea at step one of the analysis, the

court then turns to step two to examine "the elements of each claim both

individually and as an ordered combination" to see if there is an "inventive

concept—i.e., an element or combination of elements that is sufficient to ensure

that the patent in practice amounts to significantly more than a patent upon the

ineligible concept itself."  Alice, 573 U.S. at 217–18 (internal quotations omitted).

"A claim that recites an abstract idea must include additional features to ensure that

the claim is more than a drafting effort designed to monopolize the abstract idea."

Id. at 221 (internal quotations omitted).  Such "additional features" are not enough

to constitute an inventive concept if they are "well-understood, routine,

conventional activities."  Id. at 225.  To transform an unpatentable concept into a

patent-eligible application, "one must do more than simply state the [ineligible

concept] while adding the words 'apply it.'"  Mayo, 566 U.S. at 72.

## I.    Representative Claim

ButterflyMX contends that the Court should treat Claim One as

representative of all of the '675 Patent claims for purposes of determining patent

eligibility.  Def.'s Br. at 18–21.  Defendant argues that the other '675 Patent claims are directed at the same abstract idea as Claim One and add nothing inventive.  Id. at 18–19.

A court may limit its analysis of a Section 101 challenge to representative claims when the claims at issue are "substantially similar and linked to the same ineligible concept."  Mobile Acuity Ltd. v. Blippar Ltd. ("Mobile Acuity"), 110 F.4th 1280, 1290 (Fed. Cir. 2024) (internal quotation omitted).  Courts may treat a claim as representative "if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative."  See Berkheimer v. HP Inc., 881 F.3d 1360, 1365 (Fed. Cir. 2018) (citations omitted).

The patent challenger asserting that a claim is representative of multiple claims bears the initial burden of making a prima facie showing that the group of claims are substantially similar and linked to the same ineligible concept.  Mobile Acuity, 110 F.4th at 1290 (citation omitted).  If a prima facie showing is made, the burden shifts to the patent owner to demonstrate why the eligibility of the purported representative claim is not decisive of the eligibility of the other claims within the identified group.  Id.  If the patent owner cannot make a non-frivolous argument against treating the identified claim as representative, it is precluded from arguing the eligibility of the other claims in the group.  Id. (citations omitted).

Claim one of the '675 Patent recites:

A system comprising:

at least one electronic lock for locking a door of a storage room that is
stationary and part of a building. The storage room being large
enough to accommodate packages that are small, medium, and
oversized;
a lock interface that is communicatively coupled to the at least one
electronic lock, the lock interface having at least one processor
that implements one or more machine instructions stored on at
least one non-transitory computer readable medium;
wherein the one or more machine instructions, when implemented,
cause the processor of the lock interface to implement a method
including at least
receiving, at the lock interface from a terminal, a first signal
associated with a delivery, requesting access by unlocking
the door;
in response, sending from the lock interface to the at least one
electronic lock, a second signal including at least a request
to open the door;
opening the electronic lock, based on the request, and allowing
the access through the door, regardless of whether a
storage area associated with the door is in use and
regardless of whether the package is small, medium, or
oversized;
wherein the request includes at least a user identity and a code, wherein
the method further includes, after receiving the first signal
including the request,
verifying, by the lock interface, the request by authenticating the user
identity and the code received from the terminal;
approving the request, by the lock interface, after the user identity and
the code are successfully authenticated;
in response to the approving of the request, sending the second signal,
from the lock interface to the at least one electronic lock, the
second signal causing the at least one electronic lock to
automatically unlock, the at least one electronic lock including a
circuit that includes at least

> a signal input port that is communicatively connected to at least
> one signal output port of the lock interface;
>
> an electronic switch that, in response to the receiving of signals
> from the lock interface, causes electric current to flow
> through the at least one electronic lock:
>
> the step of verifying, by the lock interface, the request further including
> at least
>
> comparing, by the lock interface, the user identity and the code
> received from the terminal with data stored in the lock
> interface;
>
> approving the request, by the lock interface, when the user
> identity and the code received match the data stored in the
> lock interface, and
>
> rejecting the request, by the lock interface, when at least one of
> the user identity and the code received does not match the
> data stored in the lock interface; and
>
> in response to the rejecting of the request, sending, from the lock
> interface to the terminal, a message indicating that the
> request is invalid.

'675 Patent at 57:40–58:32. Luxer's complaint alleges that ButterflyMX infringed
one or more of the claims of the '675 Patent but discusses only Claim One.
Compl. ¶ 21–36.

As the party challenging the '675 Patent, ButterflyMX has the initial burden
to make a prima facie showing that the patent claims are "substantially similar and
linked to the same" allegedly abstract concept of authorizing access to a secure
location upon verification of a user's credentials. Mobile Acuity, 110 F.4th at
1290. In addition to Claim One, the '675 Patent describes six other independent
claims: Two, Five, Six, Seven, 19, and 20. '675 Patent at 58:33–60, 59:13–61:23,
62:26–64:23. ButterflyMX contends that these claims are not materially different

from Claim One. Def.'s Br. at 19–20. ButterflyMX asserts that Claims Six, 19, and 20 differ from Claim One in only minor wording changes, such as using the term "stored data" instead of "data stored in the lock interface." Id. at 19; compare '675 Patent at 57:40–58:32 with id. 59:47–60:39, 62:26–64:23. It contends that Claim Seven is the same as Claim One except recited as a method. Def.'s Br. at 19; compare '675 Patent at 57:40–58:32 with id. 60:39–61:23. ButterflyMX asserts Claims Two and Five are similar to Claim One except they omit certain steps. Def.'s Br. at 19; compare '675 Patent at 57:40–58:32 with id. 58:33–61, 59:13–46.

With regard to the remaining dependent claims, ButterflyMX asserts that they add only "generic components and features." Def.'s Br. at 20. It contends that Claims 11, 12, 13, and 16 each describe aspects of the storage room, such as it being used by multiple users and containing storage receptacles. Id. at 20; '675 Patent at 61:56–65, 62:1–5. ButterflyMX asserts that Claims 14 and 15 describe the door as being an outer door and opaque. Def.'s Br. at 20; '675 Patent at 61:66–67. It contends that Claims Three, Four, Eight, 21, and 22 describe components of the lock, including a circuit with an electronic switch and signal input port, a solenoid, and a striker. Def.'s Br. at 20; '675 Patent at 58:61–59:12, 61:24–28; 64:24–34. ButterflyMX asserts that Claims 24, 25, and 26 recite components of the system, such as a voltage converter and capacitive filter. Def.'s Br. at 20; '675

Patent at 64:42–51. It contends that Claims 17 and 18 describe authentication

being performed via a server or equipment. Def.'s Br. at 20; '675 Patent at 62:6–

25. The Court holds that ButterflyMX has made a prima facie showing that all of

the '675 Patent claims are substantively similar to Claim One and are linked to the

same concept of authorizing access to a secure location upon verification of a

user's credentials. Mobile Acuity Ltd., 110 F.4th at 1290.

       The burden now shifts to Luxer to present a non-frivolous argument for why

the eligibility of Claim One cannot be fairly treated as representative of all claims.

Id. Luxer does not directly contest that Claim One may be treated as representative

but makes a general contention that ButterflyMX's attempt to analogize the

remaining claims to Claim One should fail for the same reason as ButterflyMX's

challenge to the eligibility of Claim One. Pl.'s Br. at 22. Luxer has not shown that

any of the claim limitations contained in the remaining '675 Patent claims are

significantly distinct from those in Claim One as to require a separate eligibility

analysis. See Berkheimer, 881 F.3d at 1365. The Court further notes that Luxer's

complaint does not address any of the '675 Patent's claims other than Claim One.

See Compl. Accordingly, the Court will consider Count One of the '675 Patent as

representative of the other patent claims.

## II.    <u>Alice</u> Step One

ButterflyMX argues that the '675 Patent claims are not eligible for patent protection because they are directed to the abstract idea of authorizing access to a secure location upon verification of a user's credentials.  Def.'s Br. at 10. Defendant contends that claim one reflects a longstanding and common practice of controlling access to a location without purporting to offer any improvement upon existing technology.  <u>Id.</u> at 12–16.  Luxer counters that the '675 Patent claims recite a patent-eligible machine, not an abstract concept.  Pl.'s Br. at 3–5.  It further argues that ButterflyMX's view of the patent claims is overly simplistic and fails to address the requirements of each of the individual steps articulated in the patent claims.  <u>Id.</u> at 9–10.  Luxer contends that ButterflyMX's analysis conflates system claims with method claims, which do not recite tangible devices.  <u>Id.</u> at 11–12. Luxer argues that the '675 Patent claims, even if based on conventional physical components, should be considered innovative because those components are organized in a non-conventional and non-generic arrangement.  <u>Id.</u> at 14–15; 20–21.

Step one of the <u>Alice</u> analysis requires the court to "determine whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea. <u>Alice</u>, 573 U.S. at 218.  In doing so, the Court considers the claim's "character as a whole."  <u>Enfish, LLC v. Microsoft Corp.</u>, 822 F.3d 1327, 1335 (Fed. Cir. 2016);

Affinity Labs of Texas, LLC v. DirectTV, LLC ("Affinity Labs"), 838 F.3d 1253,

1257 (Fed. Cir. 2016) ("look at the focus of the claimed advance over the prior art

to determine if the claim's 'character as a whole' is directed to excluded subject

matter."). Eligible patent claims must "focus on a specific means or method that

improves the relevant technology or are instead directed to a result or effect that

itself is the abstract idea and merely invoke generic processes and machinery."

McRO, Inc. v. Bandai Namco Games Am. Inc. ("McRO"), 837 F.3d 1299, 1314

(Fed. Cir. 2016) (citing Enfish, 822 F.3d at 1336). They must do more than break

down and organize the steps that humans regularly go through in their minds when

performing tasks. See In re Jobin, 811 Fed. App'x 633, 637 (Fed. Cir. 2020).

        ButterflyMX argues that Claim One recites the basic steps of the

"longstanding, commonplace human concept for controlling access." Def.'s Br. at

11. Defendant characterizes these steps as "(1) 'receiving' a user's request (which

includes the user's identity and a code) to unlock a door to a large storage room,

(2) 'verifying' the request (by comparing the user identity and code with stored

data), and then either (3) 'approving the request' and 'allowing access' by

'automatically unlock[ing]' the door (if the data matches) or (4) 'rejecting the

request' (if the data does not match)." Id. ButterflyMX equates these to the steps

taken by a concierge and systems in buildings that require badges to access certain

areas. Id. at 11.

Claims that essentially automate actions that would normally be performed by the human mind or by a human with pen and paper, such as controlling access to resources, are generally not patentable.  See Ericsson Inc. v. Commc'n Tech. Holdings Ltd. ("Ericsson"), 955 F.3d 1317, 1327 (Fed. Cir. 2020) ("Controlling access to resources is exactly the sort of process that can be performed in the human mind, or by a human using a pen and paper, which we have repeatedly found unpatentable." (internal quotation omitted)).  A similar process of reviewing credentials was considered in Universal Secure Registry, LLC v. Apple Inc., 10 F.4th 1342 (Fed. Cir. 2021).  Universal Secure Registry involved a patent for "a system for authenticating identities of users, including a first handheld device configured to transmit authentication information and a second device configured to receive the authentication information."  Universal Secure Registry, 10 F.4th at 1352–55.  The Universal Secure Registry system was able to use biometric data, passcodes, and other identifying information for verification.  Id. at 1354.  The U.S. Court of Appeals for the Federal Circuit ("CAFC") affirmed the district court's holding that the patent claim was "directed to the abstract idea of secured verification of a person's identity."  Id.  At the trial level, the district court reasoned that the technology was an authentication method based on retrieving and reviewing information.  Id.  The district court and appellate court further noted that

the technology did not provide a solution for obtaining, generating, or analyzing

the identification data.  Id. at 1354–55.

Claim One recites processes that occur through the lock interface, including

"receiving . . . a first signal  . . . requesting access to the door," "sending from the

lock interface to the at least one electronic lock . . . a request to open the door," and

"opening the electronic lock, based on the request, and allowing the access through

the door." '675 Patent at 57:54–64.  If verification is required, the system verifies

"the request by authenticating the user identity and the code received from the

terminal" and "approv[e]s the request . . . after the user identity and the code are

successfully authenticated." Id. at 57:65–58:6.  The verification process involves

"comparing . . . the user identity and the code received from the terminal with data

stored in the lock interface," "approving the request . . . when the user identity and

the code received match the data stored in the lock interface," and "rejecting the

request . . . when at least one of the user identity and the code received does not

match the data stored in the lock interface." Id. at 58:18–32.  This process is

presented in Figure 5 of the '675 Patent, which illustrates in a flowchart an

embodiment of the method for implementing the lock system:



FIG. 5

Id. at 10–11; '675 Patent at Fig. 5, 2:16–17.

Similar to the technology considered in <u>Universal Secure Registry</u>, Claim One recites a system for accepting personal identification information, verifying the information by comparing it to available data, and accepting or rejecting the information with the only additional element being the unlocking of a door. This is analogous to the human process that would be performed by a concierge, doorman, or other attendant responsible for controlling access to a secured room. If a person wished to enter the secured room, the attendant would be required to confirm their identify against a list of authorized users and either unlock the room or deny the requesting individual access.

Luxer argues that Claim One of the '675 Patent is patent-eligible because it describes a machine, not an abstract idea. Pl.'s Br. at 3–5. To qualify as a machine for purposes of Section 101, "the claimed invention must be a 'concrete thing, consisting of parts, or of certain devices and combination of devices.'" <u>Digitech Image Tech., LLC v. Elec. for Imaging, Inc.</u>, 758 F.3d 1344, 1348–49 (Fed. Cir. 2014) (quoting <u>Burr v. Duryee</u>, 68 U.S. 531, 570 (1863)). Claim One references multiple physical components, including: "at least one electronic lock," "a door of a storage room that is stationary and part of a building," and "a lock interface." '675 Patent at 57:42–50. Qualifying as a machine, however, is not dispositive of whether a technology is patent-eligible. As the U.S. Supreme Court observed in <u>Alice</u>, that a technology "necessarily exists in the physical rather than

the purely conceptual realm is beside the point." <u>Alice</u>, 573 U.S. at 223–24. The

relevant initial question for the Court is not whether a technology is tangible, but

whether the claim at issue is directed at a patent-ineligible concept, such as a law

of nature, natural phenomena, or abstract idea. <u>Id.</u> at 217.

Luxer also attempts to draw a distinction between how courts have analyzed

the eligibility of method claims as opposed to system claims. Luxer contends that

ButterflyMX's reliance on caselaw discussing method claims is misplaced because

the '675 Patent describes a system. Pl.'s Br. at 11–12. The only support Luxer

offers for its position that method claims should be treated differently than system

claims is a quote taken from a concurring opinion to the CAFC's opinion in <u>CLS</u>

<u>Bank Int'l v. Alice Corp. Pty. Ltd</u>, 717 F.3d 1269, 1289 (Fed. Cir. 2013). Pl.'s Br.

at 11. The concurrence, in describing the system and method claims before the

court, stated that "[t]he system claims are different, however, in that they also

recite tangible devices as system components." <u>Id.</u> The Court observes that this

statement was made within the context of the claims then before the court, not as a

general comment on all method and systems claims. In fact, the next paragraph of

the concurrence noted the concern that applying a different approach to system

claims than to method claims would undermine U.S. Supreme Court precedent and

reward creative claim drafting. <u>Id.</u> The concurrence further stated that "when

[Section] 101 issues arise, the same analysis should apply regardless of claim

format." Id. at 1290. This approach appears consistent with the U.S. Supreme Court's treatment of system and method claims in Alice. Alice, 573 U.S. at 226–27. The Court finds no reason to apply a different analysis to method claims than to system claims merely because system claims involve a tangible aspect.

Luxer contends that Claim One reflects an improvement over prior art through the use of a large room that allows for the delivery of packages regardless of size. Pl.'s Br. at 6–8. Because essentially all claims are built in some way upon laws of nature, natural phenomena, or abstract ideas, Courts have deemed claims directed at a specifically asserted improvement to be patent-eligible under the first step of the Alice analysis. See Enfish, 822 F.3d at 1335–36. At step one of the Alice analysis, the Court considers whether patent claims "*focus* on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." McRO, 837 F.3d at 1314 (emphasis added).

Luxer asserts that prior storage systems were flawed in that "the delivery person may arrive at the correct address, but then cannot deliver the package to the storage system, because the door to the locker of the recipient will not open, because the locker is in use, the package is oversized and there is no other locker available." Id. at 7. Improvement upon this problem is not the focus of the '675 Patent. The assertion that the use of a large room is an improvement over existing

technology is not reflected in the Complaint.  <u>See</u> Compl.  Claim One recites a

system comprising of "at least one electronic lock for locking a door of a storage

room that is stationary and part of a building, the storage room being large enough

to accommodate packages that are small, medium, and oversized."  <u>See</u> '675 Patent

at 57:42–45.  The size of the room is not significant to the process described in the

remainder of Claim One, specifically receiving credentials, verifying credentials,

approving or denying access, and unlocking a lock.  <u>See id.</u> at 57:46–58:32.  Even

assuming that prior systems were limited in their ability to handle oversized

packages, Claim One "does not avoid the problem of abstractness."  <u>Affinity Labs</u>,

838 F.3d at 1263.  When read as a whole, Claim One concerns a system for

granting or denying access to a secured room based on the verification of a user,

not improving upon the size limitations of prior technology.

    In support of its position that Claim One recites a patent-eligible technology,

Plaintiff relies on the fact that a Patent Office Examiner accepted the recitations

now found in Claim One as patent-eligible while rejecting other claims as not

patent-eligible.  Pl.'s Br. at 4–5, 8–9.  Because patent eligibility is a matter of law,

the court is not required to afford any deference to the determinations of the U.S.

Patent and Trademark Office ("Patent Office").  <u>See</u> <u>Beteiro, LLC v. DraftKings</u>

<u>Inc.</u>, 104 F.4th 1350, 1359 (Fed. Cir. 2024) ("[A] patent examiner's consideration

of Section 101 issues does not in any way shield the patent's claims from Article

III review for patent eligibility." (internal quotation omitted)); Sanderling Mgmt.

Ltd. v. Snap Inc., 65 F.4th 698, 705 (Fed. Cir. 2023) ("[C]ourts are not required to

defer to Patent Office determinations as to eligibility.").

 Considering its character as a whole, Claim One describes a system in which

access to a secured storage area is permitted only upon authentication of a user's

credentials.  As noted above, this is not dissimilar to the role of a concierge,

doorman, or attendant that is tasked with allowing only residents and approved

individuals into a building.  The claim essentially automates actions that would

otherwise be performed by a human.  See Ericsson, 955 F.3d at 1327.  Claim One

does not "focus on a specific means or method that improves the relevant

technology" and is not "directed to a result or effect that itself is the abstract idea."

McRO, Inc., 837 F.3d at 1314.  For these reasons, the Court holds that Claim One

is directed at an abstract and patent-ineligible concept.

### III. Alice Step Two

 Having determined that Claim One concerns an abstract idea, the Court must

consider step two of the Alice analysis and determine if the claim provides an

"inventive concept sufficient to transform the claimed abstract idea into a patent-

eligible application."  Alice, 573 U.S. at 221 (internal quotation omitted).  Step two

of the Alice analysis requires the Court "to look with more specificity at what the

claim elements add, in order to determine whether they identify an 'inventive

concept' in the application of the ineligible subject matter to which the claim is directed." Affinity Labs, 838 F.3d at 1258. A claimed enhancement must "add sufficient substance to the underlying abstract idea of enhancement" and serve as "more than a conduit for the abstract idea." Yu v. Apple Inc., 1 F.4th 1040, 1045 (Fed. Cir. 2021). "[W]hether a combination of claim limitations supplies an inventive concept that renders a claim significantly more than an abstract idea to which it is directed, is a question of law that may be informed by underlying factual determinations." Beteiro, 104 F.4th at 1357 (internal quotations omitted).

As an initial matter, Plaintiff contends that it explained why its invention was an inventive concept to the Patent Office, which led to the Patent Office withdrawing its Section 101 rejection. Def.'s Br. at 21. Luxer explained to the Patent Office that the claimed system solved the problem of a delivery person being unable to deliver a package "because the door to the locker of the recipient will not open, because the locker is in use, the package is oversized and there is no other locker available." Id. at 7, ex. 1 at 69–70. Plaintiff argues that at the pleadings stage the Court must accept its representations to the Patent Office as true and that Defendant has not demonstrated by clear and convincing evidence that the statements were erroneous. Id. at 21.

The only support that Plaintiff offers for its position that the Court must accept as true statements made to the Patent Office is an unpublished case from

2018, <u>Pacific Biosciences of California, Inc. v. Oxford Nanopore Technologies,</u>
<u>Inc.</u> ("<u>Pacific Biosciences</u>"), 2018 WL 1419082 (D. Del. Mar. 22, 2018).  Pl.'s Br.
at 21.  In <u>Pacific Biosciences</u>, the plaintiff alleged in its complaint that the
defendant made statements in a parallel litigation before the International Trade
Commission conceding that the relevant technology was not known at a particular
time.  <u>Pacific Biosciences</u>, 2018 WL 1419082, at *7.  The <u>Pacific Biosciences</u>
court concluded that it was required to accept as true that the statements were made
and that doing so made it difficult "to persuade the [c]ourt by clear and convincing
evidence that the state of the pertinent art was such that the asserted claims must be
found to be nothing more than well-understood, routine, and conventional."  <u>Id.</u>
Unlike in <u>Pacific Biosciences</u>, Luxer did not raise its representations to the Patent
Office in its pleadings.  <u>See</u> <u>id.</u> at *7.  As discussed above, the Court does not give
deference to the Patent Office's determination regarding patent eligibility.  <u>Beteiro</u>,
104 F.4th at 1359; <u>Sanderling Mgmt. Ltd.</u>, 65 F.4th at 705.

The application of the '675 Patent's technology on a room large enough to
accommodate oversized packages is not a sufficiently inventive concept to
transform the abstract concept into a patentable idea.  The use of an adequately-
sized storage space is unrelated to the processes of verifying credentials or
allowing access, rather, it is an additional functionality unrelated to the abstract

concept.  Affinity Labs., 838 F.3d at 1263.  Its inclusion does nothing to enhance the abstract idea.  Yu, 1 F.4th at 1045.

ButterflyMX argues that the functions of the patent claim—using machine instructions, sending signals, opening locks, etc.—are "well-understood, routine, conventional activities previously known to the industry."  Def's Br. at 15–18. The language of the '675 Patent supports this contention.  For example, the background section states: "[t]ypically, the use of a lock provides security and privacy to a storage room(s) or a storage area(s).  This specification recognizes issues in controlling electronic locks."  '675 Patent at 1:51–52.  In describing the locks used in the system, the patent states: "[t]he electronic locks 103a-n may be any sort of locks including, but not limited to, one of, or any combination of, electronic locks that require a password or code to be opened, electronic locks having a scanner that requires a particular barcode, pattern, and/or fingerprint to be scanned to open, electronic locks that receive instructions via wireless signals (e.g., radio signals, audio signals, etc.)."  Id. at 6:18–25.

The system also uses generic components, such as a "door of a storage room that is stationary and part of a building," "signal," "machine readable medium," "keypad," and "processor."  Id. at 9:10–14 ("Lock interface 112 is a device and/or system that is communicatively connected to each of the electronic locks 103a-n. In at least one embodiment, the lock interface 112 receives and/or transmits

wireless signals (e.g., WI-FI signals, near field communication signals, Bluetooth signals, facsimile, audio signals, radio signals, infrared communication signals, etc.)"); 13:33–34 ("Processor 210 is a processor that controls the electronic locks 103*a-n*."); 16:59–67 ("Keypad 404 is a keypad that facilitates entering a password or passcode for unlocking at least one of the electronic locks 103*a-n*. Keypad 404 may include a touchpad."); 17:26–33 ("The term 'machine-readable medium' is used to refer to any non-transitory medium capable of carrying information that is readable by a machine."); see id. at 57:42–58:32. The general language used by the '675 Patent indicates that the components are of a conventional and familiar type. See Aatrix Software, Inc. v. Green Shades Software, Inc., 890 F.3d 1354, 1356 (Fed. Cir. 2018) ("In a situation where the specification admits the additional claim elements are well-understood, routine, and conventional, it will be difficult, if not impossible, for a patentee to show a genuine dispute.").

Plaintiff contends that even if the individual components are generic, their organization in an unconventional way is patentable. Pl.'s Br. at 21–22. An inventive concept can take the form of a non-conventional arrangement or configuration of conventional components. Basom Global Internet Servs., Inc. v. AT&T Mobility LLC, 827 F.3d 1341, 1350 (Fed. Cir. 2016). For an ordered combination of components to transform an abstract concept into a patentable design, they must provide something more innovative than what is contributed by

the individual components.  See <u>Alice</u>, 573 U.S. at 225.  In this case, the

components are organized in a logical fashion to allow for a request to be entered

at the lock interface, a signal to be sent to a processor to determine whether the

request is valid, a second signal to be sent to an electronic lock, and for the lock to

unlock in response to the second signal.  The organization described in Claim One

does nothing more than place the abstract idea of controlling access based on the

verification of credentials into a technological environment.  See <u>Mayo</u>, 566 U.S.

at 78 ("[T]he prohibition against patenting abstract ideas cannot be circumvented

by attempting to limit the use of the formula to a particular technological

environment." (internal quotations omitted)).  Therefore, Claim One does not pass

<u>Alice</u> step two.  The Court holds that, drawing all reasonable inferences in favor of

Luxer, the '675 Patent is not patent eligible under Section 101.

## CONCLUSION

Upon consideration of the ButterflyMX's Motion to Dismiss Pursuant to

Federal Rule of Civil Procedure 12(b)(6); Luxer's Opposition to ButterflyMX's

Motion to Dismiss, and ButterflyMX's Reply Brief in Support of its Motion to

Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), and all other papers

and proceedings in this action, it is hereby

**ORDERED** that ButterflyMX, Inc.'s Motion to Dismiss Pursuant to Federal

Rule of Civil Procedure 12(b)(6) (D.I. 26) is granted; and it is further

**ORDERED** that Luxer Corporation's Complaint (Doc. 1) is dismissed.

IT IS SO ORDERED this 6th day of February, 2025.


                                          /s/ Jennifer Choe-Groves
                                          Jennifer Choe-Groves
                                          U.S. District Court Judge[*]

---

[*]Judge Jennifer Choe-Groves, of the United States Court of International Trade, sitting by designation.